IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,

    **Plaintiff**,

        **v.**                              **Criminal No.** 19-150 (FAB)

LUIS MARCANO-GODOY [6], *et al.*,

    **Defendants.**

## OPINION AND ORDER

BESOSA, District Judge.

    Before the Court is defendant Luis Marcano-Godoy ("Marcano")'s motion to dismiss the indictment pursuant to Article I of the United States Constitution. (Docket No. 87.) Marcano also moves to stay the proceedings in this action until the First Circuit Court of Appeals issues an *en banc* opinion in United States v. Aybar-Ulloa, Case No. 15-2377. (Docket No. 88.) Defendants Eddy Carballo-Brito ("Caraballo"), Luis Del Valle-Sánchez ("Del Valle"), Erivel Guilarte-Carreño ("Guilarte"), and Yoniel Campos-Fernández ("Campos") join the dismissal and stay motions. (Docket Nos. 108, 110, 111, 114, 116, 117, 121 and 122.) Defendants Jesús González-Lunar ("González-Lunar") and Jesús González-Rodríguez ("González-Rodríguez") join only the motion to stay. (Docket Nos. 101, 104, 11 and 120.) For the reasons set

forth below, the motion to stay and motion to dismiss are both **DENIED**.  (Docket Nos. 87 and 88.)

## I.   Background[1]

On February 14, 2019, the United States Coast Guard ("USCG") located a "target of interest" ("TOI") approximately 65 nautical miles south of the United States Virgin Islands, a known drug-trafficking area.  (Docket No. 1, Ex. 1 at p. 2.)[2]  This vessel contained possible contraband on deck.  Id.  Subsequently, the occupants on board the TOI "jettison[ed] their load of suspected narcotics, later counted as twelve (12) bales." Id.  A USCG cutter recovered the bales and approached the TOI.  Id.  González-Lunar identified himself as the master and claimed Venezuelan nationality for himself and the vessel, the Jeis Julius I.  Id. at p. 3.[3]  The vessel "was taking on water" despite efforts to seal a leak in the engine room.  (Docket No. 1, Ex. 1 at p. 3; Docket

---

[1] The following allegations are based on the affidavit submitted in support of the criminal complaint, and the United States Department of State Certification for the Maritime Drug Law Enforcement Act Case Involving Fishing Vessel Jeis Julius-I (Venezuela) Federal Drug Identification Number (FDIN) – 2019531845 (hereinafter, Department of State Certification").  (Docket No. 1, Ex. 1; Docket No. 99, Ex. 1.)

[2] The territorial jurisdiction of the United States extends twelve miles from the shore.  United States v. De León, 270 F.3d 90, 91 (1st Cir. 2001).  "Outside the territorial sea are the high seas, which are international waters not subject to the dominion of any single nation."  United States v. Alaska, 422 U.S. 184, 197 (1975).  The USCG apprehended the defendants in international waters.

[3] The terms "master" and "captain" are synonymous.  United States v. Dávila-Reyes, 937 F.3d 57, 59 n.1 (1st Cir. 2019).

No. 99, Ex. 1 at p. 1.)  The nine-member crew evacuated the Jeis Julius I, "[getting] to safety onboard the [USCG cutter]." (Docket No. 99, Ex. 1 at p. 1.)

On February 15, 2019, the Government of Venezuela confirmed registration of the Jeis Julius I and authorized the USCG to search its cargo and crew. (Docket No. 99, Ex. 1 at p. 1.)  A week later, USCG guardsmen arrived in San Juan, Puerto Rico with the defendants and 12 bales of suspected narcotics.  (Docket No. 1, Ex. 1 at p. 4.)  The bales tested positive for the presence of cocaine. Id. at p. 4.  On May 14, 2019, the Government of Venezuela "confirmed its waiver of jurisdiction over JEUS JULIUS-I, its crew, and any cargo, to the extent necessary for the enforcement of United States law." (Docket No. 99, Ex. 1 at p. 3.)

A grand jury returned a three-count indictment charging the defendants with conspiracy to possess with intent to distribute a controlled substance onboard a vessel subject to the jurisdiction of the United States (count one), possession with intent to distribute a controlled substance onboard a vessel subject to the jurisdiction of the United States (count two), and conspiracy to destroy property subject to forfeiture pursuant to section 511(a) of the Comprehensive Drug Abuse Prevention Act of 1970 (count three) in violation of the Maritime Drug Law Enforcement Act

("MDLEA"), 46 U.S.C. sections 70502(c)(1), 70503(a) and 70506(a).
(Docket No. 8.)[4]

## II.   The Motion to Dismiss

Marcano, Caraballo, Del Valle, Guilarte, and Campos move to
dismiss the indictment, arguing that "Congress has exceeded its
authority under the Piracies and Felonies Clause by enacting the
MDLEA without [requiring] a nexus [to the United States]." (Docket
No. 87 at p. 14.)

### A.   Legal Standard

The defendants seek to invalidate a federal statute,
invoking "the gravest and most delicate duty that courts are called
to perform." Blodgett v. Holden, 275 U.S. 142, 148 (1927) (Holmes,
J., concurring).   "Proper respect for a coordinate branch of
government requires that [the Court] strike down an Act of Congress
only if the lack of constitutional authority to pass the [MDLEA]
is clearly demonstrated." Nat'l Fed'n of Indep. Bus. v. Sebelius,
567 U.S. 519, 537 (2012) (internal punctuation omitted); Mass. v.
United States HHS, 682 F.3d 1, 15 (1st Cir. 2012) ("Invalidating
a federal statute is an unwelcome responsibility for federal
judges; the elected Congress speaks for the entire nation, its
judgment and good faith being entitled to utmost respect.").

---

[4] The indictment also names Carlos Requena-Lugo ("Requena") and Felipe
Rodríguez-Gutiérrez ("Rodríguez") as defendants. (Docket No. 8.) Requena and
Rodríguez did not join Marcano's motion to dismiss or the motion to stay.

The defendants shoulder the burden of proving that the MDLEA is an impermissible exercise of congressional authority. See Heller v. Doe, 509 U.S. 312, 320-21 (1993) (holding that "the burden is on the one attacking the legislative arrangement to [negate] every conceivable basis which might support it, whether or not the basis has a foundation on the record"). Moreover, the Court presumes that Congress enacted the MDLEA "in accordance with the Constitution." United States v. Dwinells, 508 F.3d 63, 70 (2007) (citation omitted); United States v. Candelario-Santana, 368 F. Supp. 3d 316, 319 (D.P.R. 2019) (Besosa, J.) (citation omitted).

The motion to dismiss sets forth a facial challenge, asserting in an indiscriminate manner that the MDLEA is unconstitutional. (Docket No. 87.) The defendants allege, however, that they present an "as applied" challenge to the statute. Id. at p. 16; compare Bucklew v. Precythe, 139 S. Ct. 1112, 1127 (2019) ("A facial challenge is really just a claim that the law or policy at issue is unconstitutional in all its applications.") with Seling v. Young, 531 U.S. 250, 271 (2001) ("[A]n 'as applied' challenge is a claim that the statute, by its own terms, infringes constitutional freedoms in the circumstances of a particular case"). The arguments set forth in the motion to dismiss belie the "as applied" designation.

The defendants contend that the MDLEA is invalid without reference to the nuances of this case or the specific provisions that purportedly contravene the Constitution.  Essentially, they seek to dismantle the MDLEA as an *ultra vires* act of Congress. Consequently, the Court construes the motion to dismiss as a facial challenge to the MDLEA.  See, e.g., Nicholas v. Harris, 17 F. Supp. 3d 989, 996 n.4 (C.D. Cal. 2014) ("[T]he gravamen of Plaintiff's action is that the laws are unconstitutional because they generally inhibit the purported right to open carry.  Accordingly, as the Court has already found, Plaintiff's claims are a facial, not 'as applied,' challenge to the relevant state statutes").

To prevail, the defendants "must establish that no set of circumstances exist under which the [MDLEA] would be valid." United States v. Salerno, 481 U.S. 739, 745 (1987); see, e.g., Hightower v. City of Boston, 693 F.3d 61, 78 (1st Cir. 2012) ("Because Hightower has not shown that the statute lacks any plainly legitimate sweep, her facial attack fails.").  This burden is formidable, posing a "supremely high hurdle."  United States v. Sampson, 275 F. Supp. 2d 49, 67 (D. Mass. 2003); see Washington State Grange v. Washington State Republican Party, 552 U.S. 442, 450-51 (2008) (holding that "[f]acial challenges are disfavored for several reasons" because they "run contrary to the fundamental principle of judicial restraint").

**B.    The Maritime Drug Law Enforcement Act**

Congress enacted the Maritime Drug Law Enforcement Act in 1986 to diminish the operations of international drug trafficking organizations.   These evasive entities "constantly refine their methods for transporting illegal narcotics from country to country."  United States v. Carvajal, 924 F. Supp. 2d 219, 224 (D.D.C. 2013); see Lt. CDR Aaron J. Casavant, In Defense of the U.S. Maritime Drug Enforcement Act: A Justification for the Law's Extraterritorial Reach, 8 Harv. Nat'l Sec. J. 191, 199-200 (2017) (noting that Congress endeavored to "counter the traffickers' 'mothership' strategy, target[ing] the larger vessels sailing just outside U.S. territorial seas that were sending smaller, faster vessels to bring contraband ashore."). Consequently, the MDLEA is an expansive statute.  It provides that "an individual [on board a vessel subject to the jurisdiction of the United States] may not knowingly or intentionally:"

> (1)   manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance;
>
> (2)   destroy (including jettisoning . . .), or attempt or conspire to destroy, property that is subject to forfeiture under section 511(a) of the Comprehensive Drug Abuse Prevention and Control Act of 1970.

48 U.S.C. §§ 70503(a)(1)–(2).  "[J]urisdictional issues arising under the [MDLEA] are preliminary questions of law to be determined

solely by the trial judge," and do not constitute an element of the offense. 46 U.S.C. § 70504; see United States v. Gil-Martínez, 980 F. Supp. 2d 165, 168 (D.P.R. 2013) (Besosa, J.).

Vessels subject to criminal liability include, *inter alia*, ships "registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States." 46 U.S.C. § 70502(c)(1)(C); see United States v. Vilches-Navarret, 523 F.3d 1, 11 (1st Cir. 2008) (holding that a vessel "was subject to the jurisdiction of the United States" because the "Government of Honduras had granted . . . permission to enforce U.S. law against . . . its cargo and the people on board").[5] To facilitate expeditious consent and waiver, the MDLEA provides that the flag state may provide registry information "by radio, telephone, or similar oral or electronic means." 46 U.S.C. § 70502(d)(2).[6] A Department of State certification is conclusive proof of a nation's claim of registry.

---

[5] "Although there is a presumption that Congress does not intend a statute to apply to conduct outside the territorial jurisdiction of the United States, that presumption can be overcome when Congress clearly expresses its intent to do so." United States v. Yousef, 327 F.3d 56, 86 (2d Cir. 2003) (citing Foley Bros. v. Filardo, 336 U.S. 281, 285 (1949)); RJR Nabisco, Inc. v. European Cmty, 136 S. Ct. 2090, 2100 (2016) ("Absent clearly expressed congressional intent to the contrary, federal laws will be construed to have only domestic application,"). Congress explicitly expressed its intent that the MDLEA prohibit acts committed beyond the territorial jurisdiction of the United States, overcoming the presumption against extraterritorial application.

[6] Every vessel is required to "sail under the flag of one State only and, save in exceptional cases. . . shall be subject to its exclusive jurisdiction on the high seas." Convention on the High Seas, art. 6, Apr. 29, 1958, 13 U.S.T. 2312, 450 U N.T.S. 82.

Id.; United States v. Cardales-Luna, 632 F.3d 731, 737 (1st Cir. 2011) (holding that the Secretary of State designee "need only certify that the 'foreign nation' where the vessel is registered 'has consented or waived objection'" to United States prosecution).

The MDLEA recognizes that "controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." 46 U.S.C. § 70501(c)(1)(C). Congress specified that the MDLEA "applies even though the act is committed outside the territorial jurisdiction of the United States." 46 U.S.C. § 70503(b). Federal law enforcement officers are ubiquitous on the high seas, "constantly patrolling the Western Hemisphere's major narcotics trafficking vectors with the intent of locating and then boarding those vessels suspected of illicit drug trafficking." Capt. James D. Carlson and Lt. Timothy N. Cronin, Transnational Organized Crime in the Maritime Domain, and Broader Consideration for the United States' Interagency, 4 U. Miami Nat'l Sec. & Armed Conf. L. Rev. 43, 47 (2013).

### 1. The Define and Punish Clause

The linchpin of the defendants' argument is that Congress exceeded its authority in enacting the MDLEA by prohibiting acts committed in international waters without

requiring a "nexus" to the United States. (Docket No. 87 at pp. 14—15.) "The powers of the legislature are defined and limited; and that those limits may not be mistaken or forgotten, the constitution is written." Marbury v. Madison, 5 U.S. (1 Cranch) 137 (1803) (Marshall, C.J.) (invalidating a provision of the Judiciary Act of 1789). Accordingly, Congress "can exercise only the powers granted to it." McCulloch v. Maryland, 17 U.S. (4 Wheat) 316 (1819) (Marshall, C.J.).

        The MLDEA derives from Article I, granting Congress the authority to "define and punish Piracies and Felonies committed on the high seas, and Offences against the Law of Nations." U.S. CONST. art. I, § 8, cl. 10. Since the founding of the United States, "the ability to effectively prosecute crime committed on the high seas was seen as vital to the interests of the Confederation." Adam H. Kurland, First Principles of American Federalism and the Nature of Federal Criminal Jurisprudence, 45 EMORY L.J. 1, 23-4 (1996) (noting that the framers convened the Constitutional Convention in part because "crimes occurring on the high seas, by definition occurred outside the territorial jurisdiction of a particular state and thus made the issue of state prosecution problematic"). In fact, the Define and Punish Clause is the "only specific grant of power to be found in the Constitution for the punishment of offenses outside the

territorial limits of the United states." United States v. Suerte, 291 F.3d 366, 376 (5th Cir. 2002).  The Constitution does "not explicitly require [that] a nexus between the unlawful conduct committed on the high seas and the United States be established before Congress can punish that conduct." United States v. Nueci-Peña, 711 F.3d 191, 198 (1st Cir. 2013).

The framers entrusted Congress to define "felonies" within the context of Article I "[f]or the sake of certainty and uniformity."  THE FEDERALIST NO. 42, at 262 (James Madison) (Clinton Rossiter ed., 1961).  The meaning of the term "felony" varied, "even in the common law of England" and among the states.  Id.; United States v. Smith, 18 U.S. (5 Wheat) 153 (1820) (noting that the phrase "felonies committed on the high seas" is "necessarily somewhat indeterminate").  Ultimately, the Constitution "give[s] Congress wide latitude to define and punish crime on the high seas without being moored to an existing definition, whether under the law of nations, the common law, or another nation's statute." Nathan S. Chapman, Due Process Abroad, 112 NW. U. L. REV. 377, 402 (2017).

**2.  Discussion**

The following international law principles provide an analytical framework for determining whether the MDLEA is a permissible exercise of congressional authority:  (1) national,

Criminal No. 19-150 (FAB)                                        12

(2) passive personality, (3) objective territorial, (4) protective, (5) universal, and (6) territorial. RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 402 (AM. LAW INST., 6th Edition, November 2019 update); see United States v. Robinson, 843 F.2d 1 (1st Cir. 1988) (upholding an extraterritorial drug-trafficking statue based on the protective and territorial principles); United States v. Lidinilah, Case No. 20-033, 2020 U.S. Dist. LEXIS 59391, at *8—10 (D.P.R. Apr. 3, 2020) (Arias-Marxuach, J.).[7]  Only the latter three principles are relevant to the defendants' motion to dismiss.[8]

> ### 3.  The Territorial, Protective and Universal Principles of Jurisdiction

The territorial principle provides that "a state may exercise jurisdiction with respect to all persons or things within its territory." Benedict on Admiralty, § 112(a)(3) (2019) (hereinafter, "Benedict").  This doctrine is "the most common basis

---

[7] International law is defined as the "rules and principles of general application dealing with conduct of states and of international organizations and with their relations inter se, as well as with some of their relations with persons, whether natural or juridical." RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STAETS, § 101 (AM. LAW. INST. 1987).  Sources of international law include customary law and international agreements. Id. § 102. Customary international law is a compilation of "those clear and unambiguous rules by which states universally abide, or to which they accede, out of a sense of legal obligation and mutual concern." Igartúa-de La Rosa v. United States, 417 F.3d 145, 175 (1st Cir. 2005).

[8] The Harvard Research Project developed this framework in 1935 "to codify the principles of jurisdiction under international law." United States v. Yunis, 681 F. Supp. 896, 900 (D.D.C. 1988) (citing Harvard Research in International Law, Jurisdiction with Respect to Crime, 29 Am. J. Int'l L. 435, 445 (Supp. 1935).

of jurisdiction over crime in the United States". Christopher L. Blakesley, <u>Criminal Law: United States Jurisdiction Over Extraterritorial Crime</u>, 73 J. CRIM. L. & CRIMINOLOGY 1109, 1114 (1982). Pursuant to the territorial principle, "ships on the high seas are regarded as [the] territory of their flag state and placed under the exclusive jurisdiction of the latter by customary international law." <u>Id.</u> § 112(a)(4); <u>United States v. Arra</u>, 630 F.2d 836 (1st Cir. 1980) ("Vessels have the nationality of the nation whose flag they are entitled to fly . . . and are subject to [that] nation's jurisdiction when on the high seas.").

The protective principle "permits a nation to assert jurisdiction over a person whose conduct outside the nation's territory threatens [its] security." <u>Robinson</u>, 843 F.2d at 3. Pursuant to this principle, foreign citizens are criminally liable for conduct that is "potentially adverse" with "actual or intended effect[s]" inside the United States. <u>See, e.g.</u>, <u>United States v. Batson</u>, 818 F.3d 651, 670 (11th Cir. 2016) (upholding an act prohibiting overseas sex trafficking because this crime "implicates the national security of the United States.").

The universal principle pertains to behavior "recognized by the international community as [constituting] crime against humanity," (<i>i.e.</i> slave trade, piracy and genocide). <u>Benedict</u>, § 112(b)(4). This principle "holds that a nation may

prosecute offenses to which it has no connection at all – the jurisdiction is based solely on the extraordinary heinousness of the alleged conduct."  Eugene Kontorovich, The Piracy Analogy: Modern Universal Jurisdiction's Hollow Foundation, 45 HARV. INT'L L.J. 183 (2004); see United States v. Dávila-Reyes, 937 F.3d 57, 70 (1st Cir. 2019) (noting that the universal principle "departs from the more typical requirement of a specific connection between the state exercising jurisdiction and the person or conduct being regulated") (Lipez, J., concurring) (citation omitted).

### 4.    The MDLEA and the Territorial Principle

Marcano, Caraballo, Del Valle, Guilarte, and Campos contend that the protective principle is an insufficient basis for exercising extraterritorial jurisdiction, but fail to address the territorial principle.  (Docket No 87.)  This omission is fatal to their motion to dismiss.

### a.    Precedent from the Frist Circuit Court of Appeals

In United State v. Robinson, the First Circuit Court of Appeals addressed the constitutionality of the Marihuana on the High Seas Act ("MHSA"), a drug-trafficking statute with extraterritorial reach.  843 F.2d 1 (1st Cir. 1988) (Breyer, J.). United States law enforcement officers arrested the defendants 500 miles east of North Carolina onboard the M/V Juan Robinson, a

Panamanian vessel.   _Id._ at 2.   The Government of Panama subsequently "permit[ted] the United States to apply its law." _Id._ at 4.  On appeal, the defendants argued that "Congress did not intend to exceed the bounds of international law" by enacting a statute that "forbids offshore drug possession."  _Id._ at 2—3

         The defendants questioned whether the protective principle justified prosecution of "foreigners on foreign ships [in international waters] from possessing drugs that . . . might be bound to Canada, South America, or Zanzibar."  843 F.2d at 3.  This argument was, however, "beside the point."  _Id._ at 4.   The _Robinson_ court upheld the defendant's conviction pursuant to the territorial principle, "a perfectly adequate basis in international law for the assertion of American jurisdiction." _Id._  Consent provided by the Government of Panama constituted an exception to exclusive flag state jurisdiction.  _Id._ ("It is clear, under international law's 'territorial principle,' that a 'state has jurisdiction to prescribe and enforce a rule of law in the territory of another state to the extent provided by international agreement with the other state.") (citing RESTATEMENT (SECOND) OF FOREIGN RELATIONS LAW OF THE UNITED STATES §3(3) (1965)).  This holding is consistent with well-established precedent. See _The Schooner Exchange v. McFadden_, 11 U.S. (7 Cranch) 116, 136 (1812) ("The jurisdiction of the nation within its own territory is necessarily

exclusive and absolute . . . All exceptions, therefore, to the full and complete power of a nation within its own territories, must be traced to the consent of the nation itself") (Marshall, C.J.); United States v. Green, 671 F.2d 46, 52 (1st Cir. 1982) (holding that the Convention on the High Seas and federal statutes provide "ample authority for the Coast Guard to board and search a foreign flag vessel [in international waters] when the flag state consents").

### 5.   The MDLEA and Flag State Consent

Courts routinely rely on the rationale set forth in Robinson, solidifying the consent exception to flag state jurisdiction.   In United States v. Cardales, the crew of a "go-fast" vessel jettisoned 1080 pounds of marijuana into the Atlantic Ocean, approximately 150 miles south of Puerto Rico.   168 F.3d 548, 551 (1st Cir. 1999).   The flag state confirmed "that [the vessel was of] Venezuelan registry . . . and authorized the arrest of and application of [the MDLEA]."   Id. at 552.   The crew members argued on appeal that "the Fifth Amendment Due Process Clause requires the government to prove a nexus between their criminal conduct and the United States."   Id.   Flag state consent satisfied due process requirements, however, obviating an obligatory nexus to the United States.   Id.   In *dictum*, the First Circuit Court of Appeals observed that:

> The question of whether Congress intended to override international law is not presented here.  To the extent that international law requires a nexus to the United States, that nexus requirement is not overridden by the MDLEA, but instead is satisfied by the foreign flag nation's authorization to apply U.S. law to the defendants and by the congressional finding that drug trafficking aboard vessels threatens the security of the United States.

168 F.3d at 553 n.2.

The First Circuit Court of Appeals has repeatedly refused to mandate a nexus requirement in MDLEA prosecutions, albeit in *dicta* or in actions subject to a plain error standard of review.  See United States v. Rodríguez, 507 F.3d 749, 761-62 (1st Cir. 2007) ("We have previously held that the MDLEA does not contain such a nexus requirement; the flag nation's consent to jurisdiction is sufficient") (citing United States v. Bravo, 489 F.3d 1, 7 (1st Cir. 2007) ("We do not read the MDLEA to require a jurisdictional nexus.")); Nueci-Peña, 711 F.3d at 197 (holding that the "MDLEA does not require a nexus between a defendant's conduct and the United  States").

Although the First Circuit Court of Appeals has not "squarely passed on whether Congress's authority [in the Define and Punish Clause] is restricted to crimes with a United States nexus," district courts often cite Robinson and its progeny in denying motions to dismiss MDLEA actions on this basis.  United States v. Reid-Vargas, Case No. 14-747, 2015 U.S. Dist. LEXIS 60735

*17 (D.P.R. May 6, 2015); <u>United States v. Díaz-Docel</u>, 990 F. Supp.
2d 163, 164 (D.P.R. 2014) (holding that the MDLEA is a
"constitutional exercise of Congress' power under the Felonies
Clause'") (citing <u>Nueci-Peña</u>, 711 F.3d at 198)) (Besosa, J.).[9]
Moreover, the majority of federal appellate courts are in agreement
that Congress acted within the parameters of Article I.[10]

The circumstances before this Court are glaringly
similar to the facts in <u>Cardales</u>.  The Government of Venezuela
consented to the application of United States law.  (Docket No. 99,

---

[9] <u>See also United States v. Salazar-Realpe</u>, Case No. 15-087, 2015 U.S. Dist.
LEXIS 80016 *7 (D.P.R. June 18, 2015) (holding that the "MDLEA is
constitutionally valid under the Define and Punish Clause") (Delgado-Hernández,
J.); <u>United States v. Ramírez</u>, Case No. 19-117, 2019 U.S. Dist. LEXIS 189135
*4-5 (D.P.R. Oct. 28, 2019) (holding that the "MDELA does not exceed Congress'
power under the Define and Punish Clause") (Cerezo, J.); <u>United States v. Trapp</u>,
Case No. 16-159, 2017 U.S. Dist. LEXIS 101569 *17 (D.P.R. May 11, 2017) (holding
that the "Felonies Clause provided sufficient congressional authority to enact
the MDLEA") (McGiverin, Mag. J.); <u>Singleton v. United States</u>, 789 F. Supp. 492
(D.P.R. 1991) ("[T]here is nothing offensive to the Constitution nor
inconsistent with international law for the United States to assert jurisdiction
over its own vessel in international waters to prohibit the activity prescribed
by this statute, not for the United States to do the same over a vessel the
flag country of which has ceded jurisdiction to the United States.") (Fusté,
J.).

[10] <u>See</u> <u>United States v. Pérez-Oviedo</u>, 281 F.3d 400, 403 (3rd Cir. 2002) (holding
that MDLEA "expresses the necessary congressional intent to override
international law to the extent that international law might require a nexus to
the United States for the prosecution of the offenses defined in the [statute]")
(quotation omitted); <u>Suerte</u>, 291 F.3d at 375 (holding that "international law
does not require a nexus" when the flag state consents to the application of
United States law); <u>United States v. Rendón</u>, 354 F.3d 1320, 1325 (11th Cir.
2003) (holding that "this circuit . . . has not embellished the MDLEA with a
nexus requirement") (citation omitted).  The Ninth Circuit Court of Appeals
adopts a minority view, "require[ing] a "nexus between the prohibited activity
and the United States" pursuant to the Due Process Clause.  <u>United States v.
Perlaza</u>, 439 F.3d 1149, 1168-69 (9th Cir. 2006) ("The fact that the Government
received Colombia's consent to seize the members of the Gran Tauro, remove them
to the United State, and prosecute them under United States law in federal court
does not eliminate the nexus requirement.").

Ex. 1.)  Although the defendants are foreign citizens, the Jeis Julius I is registered in Venezuela, and interdiction occurred on the high seas, the MDLEA nonetheless applies in this case because the flag state provided consent to prosecute.  Extraterritorial jurisdiction is proper pursuant to the territorial principle. Accordingly, the motion to dismiss is **denied**.

**6.   The Defendants' Arguments are Unavailing**

Five pages of the motion to dismiss consists of a quote from United States v. Bellaizac-Hurtado, a decision issued by the Eleventh Circuit Court of Appeals.  700 F.3d 1245 (11th Cir. 2012).  The facts involved in Bellaizac-Hurtado are distinguishable from those at issue here.  In Bellaizac-Hurtado, the USCG observed a suspicious fishing vessel in Panamanian waters. Id.  Subsequently, the Panamanian Navy "pursued the vessel until [the crewmen] abandoned [ship] and fled into the jungle," recovering 760 kilograms of cocaine.  Id.  Panamanian law enforcement officers located the crew "in various locations on the beach and in the jungle."  Id. at 1248.  A grand jury charged the crewmen with violating the MDLEA after the Government of Panama consented to the application of United States law.  Id.  The Bellaizac-Hurtado court vacated their convictions, holding that drug-trafficking is not an "Offence[] against the Law of Nations" within the meaning of the Define and Punish Clause.  Id. at 1247.

Bellaizac-Hurtado is inapplicable because the crewmen were apprehended on foreign territory, not on the high seas. Id. at 1257-58. In fact, the Bellaizac-Hurtado court recognized that Congress possesses the "constitutional authority to restrict conduct on the high seas, including . . . the Felonies Clause" in Article I. Id. at 1257 ("We have always upheld extraterritorial convictions under our drug trafficking law as an exercise of power under the Felonies Clause."). Just this year, the Eleventh Circuit Court of Appeals reaffirmed that "MDLEA is a valid exercise of Congress's power under the Felonies clause as applied to drug trafficking crimes without a 'nexus' to the United States." United States v. Cabezas-Montano, 949 F.3d 567, 587 (11th Cir. 2020). Accordingly, Bellaizac-Hurtado is inapplicable and only undermines the defendant's motion to dismiss.

The defendants cite United States v. Aybar-Ulloa and United States v. Dávila-Reyes for the proposition that "drug trafficking is not a specific threat to the security and societal well being of the USA." 947 F.3d 121 (1st Cir. 2020); 937 F.3d 57 (1st Cir. 2019). Both decisions concern MDLEA prosecutions involving stateless vessels. United States v. Aybar-Ulloa, 913 F.3d 47, 50 (1st Cir. 2019) ("[The defendant] conceded below that he was on board a vessel 'without nationality.'"); Dávila-Reyes, 937 F.3d at 62 ("Appellants' primary constitutional challenge

targets a section of the MDLEA that allows U.S. authorities to deem a vessel 'without nationality' – *i.e.*, 'stateless' – when certain conditions are met."). This distinction is significant because the nationality of a vessel, or lack thereof, implicates which principle of extraterritorial jurisdiction is applicable.

In Dávila-Reyes, the First Circuit Court of Appeals affirmed the defendants' convictions, holding that "[under] governing . . . precedent, the protective principle of international law permitted the United States to arrest and prosecute [the defendants]." 937 F.3d at 64. The statutory language set forth in the MDLEA resounds in the protective principle, stating that "trafficking in controlled substances aboard vessels is a serious international problem, is universally condemned, and presents a specific threat to the security and societal well-being of the United States." Id. at 62 (citing 46 U.S.C. § 70501). Judge Kermit V. Lipez issued a concurring opinion "to explain why . . . our circuit's caselaw on the protective principle of international law is flawed." Id. The concurrence differentiated stateless vessels (*i.e.* protective principle) from foreign vessels (*i.e.* territorial principle). Id. at 68. (noting that Cardales "focused primarily on consent, and [the First Circuit Court of Appeals] only briefly addressed the protective principle").

The Aybar-Ulloa court initially affirmed the defendant's MDLEA conviction because the "United States, as a matter of international law, may prosecute drug offenders on stateless ships found on the high seas." 913 F.3d at 54. In a dissenting opinion, Judge Juan R. Torruella argued that Congress cannot "prosecute conduct by foreign nationals on the high seas that have no nexus to the United States." Id. at 59. (citing Eugene Kontorovich, Beyond the Article I Horizon: Congress's Enumerated Powers and Universal Jurisdiction over Drug Crimes, 93 MINN. L. REV. 1191, 1212 (2009)).

The First Circuit Court of Appeals subsequently vacated the Aybar-Ulloa decision, granting the defendant's petition for an en banc hearing. United States v. Aybar-Ulloa, 947 F.3d 121 (1st Cir. 2020). The en banc petition cited the following "question of exceptional importance:" "whether Congress exceeded its authority under the article I, section 8, clause 10 to the United States Constitution by enacting the [MDLEA], as applied to a defendant on a stateless vessel whose conduct bore no nexus to the United Sates." Petition for Appellant at 1, Case No. 5-2377 (Jan. 23, 2019) (emphasis added). The First Circuit Court of Appeals set forth six questions for the parties to address in their respective briefs in anticipation of oral argument,

repeatedly referring to "stateless" vessels.  947 F.3d at 121-22.[11]
For instance, the *en banc* order questioned whether "the protective
principle [allows] a nation to prosecute all drug trafficking on
the high seas that take place on stateless vessels."  Id. at 121.
The sole issue before the Ayar-Ulloa court is whether Congress
possesses the authority to prohibit criminal conduct on stateless
vessels without a nexus to the United States.

Unlike Aybar-Ulloa, this action pertains to the
prosecution of individuals apprehended onboard a foreign vessel in
international waters.  Here, the United States "has jurisdiction
to prescribe and enforce a rule of law in the territory of another
state to the extent provided by international agreement with that
other state."  Cardales, 168 F.3d at 553.  The USCG obtained
consent from the Government of Venezuela to search the cargo and
crew of the Jeis Julius I, a permissible exercise of its sovereign
authority pursuant to the flag state rule.  (Docket No. 99, Ex. 1;
RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW OF THE UNITED STATES § 522 cmt.
e (1987) ("Interference with a ship that would otherwise be
unlawful under international law is permissible if the flag state
has consented."); United States v. Rogers, 150 U.S 1893) ("[A]
vessel is deemed part of the territory of the country to which she

---

[11] The First Circuit Court of Appeals set oral argument for June 23, 2020.  Case
No. 15-2377 (1st Cir. May 19, 2020) (oral argument order).

belongs"); <u>Lauritzen v. Larsen</u>, 345 U.S. 571, 584 (1953) ("Perhaps the most venerable and universal rule of maritime law . . . is that which gives cardinal importance to the law of the flag."). Moreover, Venezuela waived jurisdiction "to the extent necessary for the enforcement of United States law." (Docket No. 99, Ex. 1.) Accordingly, the defendants are subject to the jurisdiction of the United States pursuant to the territorial principle. <u>See, e.g.</u>, <u>Weir v. United States</u>, Case No. 19-23420, 2020 U.S. Dist. LEXIS 16076, at *21 (S.D. Fla. Jan. 30, 2020) ("[Under] the territorial principle, the United States is empowered to criminalize conduct on the high seas even if such conduct occurs on a foreign vessel, so long as the country in which the vessel is registered 'consented or waived objection to the enforcement of United States law by the United States.'") (quoting 46 U.S.C. § 70502(c)(1)(C)).

     The defendants rely on Professor Eugene Kontorovich ("Kontorovich") throughout their motion to dismiss. (Docket No. 87.) He asserts that "[in] general, the Constitution does not empower Congress to legislate over foreigners in international waters or abroad." 93 MINN. L. REV at 1251. Professor Kontorovich purports that universal jurisdiction is reserved for a discrete category of crimes (*i.e.* piracy). <u>Id.</u> Drug trafficking is not, he claims, an offense subject to universal jurisdiction. <u>Id.</u> According to Professor Kontorovich, the MDLEA is unconstitutional

because it does not contain a nexus requirement.  Id.  Other

scholars disagree.  See Casavant, 8 Harv. Nat'l Sec. J. at 118

("Although drug-trafficking is not subject to [universal

jurisdiction] because it is not recognized as a universal crime

like slavery or genocide, the MDLEA remains a valid exercise of

congressional power pursuant to the Define and Punish Clause

because [universal jurisdiction] is not the only rationale for the

exercise of U.S. criminal jurisdiction over maritime drug

trafficking.").

        Courts have rejected Professor Kontorovich's

arguments, noting that he expresses "an opinion of what the law

ought to be, not what it is." Carvajal, 924 F. Supp. at 254.

Precedent from the First Circuit Court of Appeals, the United

States District Court for the District of Puerto Rico, and the

majority of federal appellate courts persuade this Court that the

MDLEA is a proper exercise of the authority instilled in Congress

by the Define and Punish Clause of Article I.

        The defendants speculate that "[i]f the USA has no

limits to the exercise of its police power in the high seas, how

will the USA manage, or respond to, countries that would similarly

choose to apply their laws in the high seas." (Docket No. 87 at

p. 14.)  The MDLEA does not exist in a vacuum.  The United Nations

Convention Against Illicit Traffic in Narcotic Drugs and

Psychotropic Substances of 1988 ("1988 Vienna Convention")
underscores that the MDLEA is consistent with international law.
1582 U.N.T.S. 95, 28 U.L.M. 493 (1989).[12]   The 1988 Vienna
Convention serves to "promote cooperation among the Parties so
that they may address more effectively the various aspects of
illicit traffic in narcotics," "recognizing that the eradication
of illicit traffic is a collective responsibility of all States."
Id. art. 2.   Pursuant to this agreement, participating states
"shall co-operate to the fullest extent possible to suppress
illicit traffic by sea, in conformity with the law of the sea."
Id. art. 17(1).   The United States and Venezuela, among other
states, "shall adopt such measures as may be necessary to establish
as criminal offense under its domestic law" the production and
distribution of narcotic drugs.   Id. art. 3.   The 1988 Vienna
Convention implicitly endorses flag state consent in Article 4,
providing that a party may "establish its jurisdiction over [drug-
trafficking] offenses . . . which that Party has been authorized
to take appropriate action pursuant to article 17."   Id.
art. 4(b)(ii).   Article 17 requires the parties to enter "into

---

[12] In 1988, the United Nations Commission on Narcotic Drugs held a conference in Vienna to adopt a draft of this convention, "which had been over three years in the making." 28 I.L.M. 497 (1989).   The United States and Venezuela ratified the 1988 Vienna Convention in 1990 and 1991, respectively.   See Multilateral Treaties Deposited with the Secretary-General, Vol. I, Part I, pg. 581 (Apr. 1, 2009) (available at https://treaties.un.org/doc/source/publications/MTDSG/200 9-vol.1-english.pdf) (last visited May 15, 2020).

bilateral or regional agreements" to enforce the Convention.  Id.
art. 17(c)(9).

> In 1991, the United States and Venezuela entered
into a bilateral agreement to implement Article 17 of the 1988
Vienna Convention.  See Agreement between the Government of the
United States of America and the Government of Venezuela to
suppress illicit traffic in narcotic drugs and psychotropic
substances by sea, TIAS 11827.  This agreement sets forth the
procedure for obtaining registry verification and boarding
authorization.  Id.  Section 8 provides that:

> If the Party conducting the boarding and search
> discovers evidence of illicit traffic aboard the suspect
> vessel, or determines that the vessel is configured for
> illicit traffic, the Party may temporarily detain the
> vessel and person on board.  In such cases, the Party
> shall promptly report orally the results of the boarding
> and search to the flag State . . . in order to obtain
> the decision by the flag State as to which Party is to
> exercise enforcement jurisdiction, and what actions will
> be taken with the vessel, cargo, and persons on board.
> The flag State shall communicate its decision
> expeditiously.

Id. § 8 (emphasis added).  The 1988 Vienna Convention and the
ensuing bilateral agreement constitute additional evidence that
the MDLEA comports with international law.

> **7.    The Motion to Stay**

> The defendants maintain that "the issues presently
before the Court of Appeals for the First Circuit in [Aybar-Ulloa]

impact the issues presented . . . in the motion to dismiss."
(Docket No. 88 at p. 1.)   The issues in <u>Aybar-Ulloa</u> are not,
however, pertinent to this action.   <u>See</u> Supra Part II(c)(4).
Accordingly, the motion to stay is **denied**.

## IV.  Conclusion

For the reasons set forth above, the motion to dismiss the
indictment and the motion to stay are **DENIED**.   (Docket Nos. 87
and 88.)

**IT IS SO ORDERED**.

San Juan, Puerto Rico, May 21, 2020.

<u>s/ Francisco A. Besosa</u>
FRANCISCO A. BESOSA
UNITED STATES DISTRICT JUDGE